**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

JOSHUA CACHO,

Plaintiff,

v.

USHEALTH ADVISORS, LLC, USHEALTH GROUP, INC., UNITEDHEALTHCARE OF TEXAS, INC., ROBERTO CABRERA, JOHN MURILLAS, JORDAN RICHEY, NATHALIA PEREZ, BRANDON MARTINEZ, and JENNIFER MASER,

Defendants.

Case No. 3:24-cv-00350-LS

**DEFENDANT USHEALTH ADVISORS, LLC'S MOTION TO DISMISS PLAINTIFF JOSHUA CACHO'S AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6), Defendant USHEALTH Advisors, LLC ("USHA") moves to dismiss Plaintiff Joshua Cacho's Amended Complaint (Dkt. No. 11) ( "Am. Compl."), and in support thereof states as follows:

**PRELIMINARY STATEMENT**

Plaintiff has filed over thirty *pro se* lawsuits under the Telephone Consumer Protection Act ("TCPA"). Including this case, three of them have been filed against USHA or its parent corporation, USHEALTH Group, Inc. ("USHG"), over the same set of alleged telephone solicitations. *See Cacho v. USHEALTH Group, Inc.*, No. 6:22-cv-01439-CEM-EJK (M.D. Fla.) ("*Cacho I*"); *Cacho v. USHEALTH Advisors, LLC*, No. 6:23-cv-00737-CEM-EJK (M.D. Fla.) ("*Cacho II*"). As Plaintiff acknowledges in his Amended Complaint, the *Cacho II* lawsuit "is ongoing and has not been resolved." Am. Compl. at ¶ 56.

In *Cacho II*, Plaintiff's motion to compel discovery regarding telephone calls – as opposed to text messages – was denied because Plaintiff's operative Second Amended Complaint alleges the receipt only of text messages. *Id.* at ¶ 74. Rather than seek leave to amend *in that case*, for a third time, to allege the receipt of telephone calls as well as to overcome that discovery ruling, Plaintiff decided to open a new front and commence this action, yet another lawsuit against USHA.

The attempt by Plaintiff to now bring these claims in the Western District of Texas is an impermissible effort at claim-splitting and must be dismissed. Plaintiff's claims in this lawsuit are plainly based on the same nucleus of operative facts in *Cacho II*. Both lawsuits are based upon alleged telephone solicitations made to Plaintiff by or on behalf of the same party, USHA, between the years 2021 through 2023. The lone count asserted here is virtually word-for-word the same as Count I in *Cacho II*. Further, Plaintiff now names as defendants in the Amended Complaint in this action USHG, Roberto Cabrera, John Murillas, Jordan Richey, Nathalia Perez, Brandon Martinez,

and Jennifer Maser. *Id.* at ¶¶ 6, 14-25. In *Cacho II*, USHG is also a named defendant and Maser used to be one. Ex. A at ¶ 3; Ex. B at ¶ 3. Further, after learning from discovery in *Cacho II* the identities of the independently contracted licensed insurance advisors who texted him, (Am. Compl. at ¶¶ 62-64), rather than seeking to add them as defendants in that lawsuit after prior amendments, Plaintiff now attempts to file a new lawsuit against them here. Why not ask the court for leave to add them as defendants in the lawsuit in which they were identified? This only further reinforces that *Cacho II* and this new lawsuit are intertwined and about the same alleged "telephone solicitations."

The Amended Complaint in this case indisputably involves the same parties and claims as the operative Complaint in *Cacho II*. The rule against claim-splitting is meant to ensure that all claims arising out of the same nucleus of facts and series of transactions be presented in one action and protect parties from being harassed by repetitive actions based on effectively the same dispute. For reasons of judicial economy and to avoid harassment and inconsistent results, Plaintiff's two overlapping sets of claims must be brought in the same lawsuit, and he cannot commence a new one to assert the second set. Plaintiff's claims should be dismissed for claim-splitting.

Additionally, the Amended Complaint should be dismissed for impermissibly lumping the (now) nine Defendants together. Throughout the Amended Complaint, Plaintiff lumps three corporate entities – USHA, USHG, UnitedHealthcare of Texas, Inc. – and six individuals – Cabrera, Murillas, Richey, Perez, Martinez, and Maser – together as "Defendants," and makes virtually all of his allegations against that composite. Plaintiff does not even attempt to distinguish to whom (or which) among the nine Defendants his various allegations apply. What does Plaintiff allege USHA did as opposed to the eight other Defendants? Rather than make the specific allegations about each Defendant's conduct necessary for notice pleading and to state a plausible

claim for relief, he makes implausible allegations that all nine Defendants allegedly called or texted him and all are responsible, apparently in the exact same manner, for violating the TCPA.

Moreover, even if for some reason Plaintiff's splitting of his claims and lumping of the Defendants were allowed, he has done so in the wrong venue. The Western District of Texas has no valid connection to Plaintiff's claims. At the time of the alleged calls, Plaintiff resided in the Orlando, Florida area (hence all the lawsuits in the Middle District of Florida). In his Amended Complaint, Plaintiff now attempts to establish proper venue by alleging that USHA resides in Texas, transacts business within the State of Texas, and derives "substantial revenue" from marketing and selling insurance products to consumers in the State of Texas. Am. Compl. at ¶¶ 29-30. To start, Plaintiff has already (correctly) alleged that Maser is a Florida resident, precluding venue under 28 U.S.C. § 1391(b). Moreover, USHA resides in Fort Worth, Texas which is in the Northern District of Texas. When analyzing venue, the districts within the state must be analyzed as if each district is a separate state. USHA's principal place of business is in Fort Worth, and any alleged conduct cannot be deemed to have occurred in the Western District of Texas because Plaintiff resided in Florida at the time of the alleged calls. Therefore, venue is clearly improper, and if the Amended Complaint is not dismissed under Rule 12(b)(6) for claim-splitting or defendant lumping, it is due to be dismissed for improper venue under Rule 12(b)(3).

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF

#### A. Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Labels, conclusions, and naked assertions are not

sufficient. *Id.* Rule 12(b)(6) must be read with Rule 8(a) which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662 (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Where a plaintiff fails to state a cause of action for which relief can be granted, the court must dismiss the case. *Id.* at 679.

**B. Plaintiff Impermissibly Split His Claims Against USHA**

The rule against claim-splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action. *Ameritox, Ltd. v. Aegis Sciences Corp.*, No. 3:08-CV-1168-D, 2009 WL 305874, *4 (N.D. Tex. Feb. 9, 2009). The rule is based on principles of *res judicata* and "protect[s] the defendant from being harassed by repetitive actions based on the same claim." *General Land Off. v. Biden*, 71 F.4th 264, 270 (5th Cir. 2023) (quoting *In re Super Van, Inc.*, 92 F.3d 366, 371 (5th Cir. 1996)). Under the rule against claim-splitting, the second suit will be barred if the claim in the second lawsuit involves the same parties and arises out of the same transaction or series of transactions as in the first claim. *Ameritox*, 2009 WL 305874 at *4. *See also In re Super Van Inc.*, 92 F.3d at 371. In determining whether two suits present the same claim or cause of action, the courts apply the transactional test from the *Restatement (Second) of Judgments* § 24. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). "[T]he critical issue is whether the two actions were based on the 'same nucleus of operative facts,'" and "we look to the factual predicate of the claims asserted,

not the legal theories upon which the plaintiff relies." *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992) (citation omitted). The transactional test assesses whether the factual predicate of both suits is "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Petro-Hunt*, 365 F.3d at 396 (quoting Restatement (Second) of Judgments § 24(2) (1982)).

Because the prohibition against claim-splitting is based upon *res judicata* principles, the courts rely on a four-part test for the doctrine of *res judicata*: (1) the parties in the current action are the same or "in privity with the parties in the prior action"; (2) "the court that rendered the prior judgment" was a "court of competent jurisdiction"; (3) the prior action "terminated with a final judgment on the merits"; and (4) the "same claim or cause of action" is "involved in both suits." *Armadillo Hotel Group, L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023) (quoting *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994)). This test is modified when the prior suit is pending because, by definition, no final judgment from the prior suit exists. *Harris*, 84 F.4th at 628; *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985). *See also* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice and Procedure* § 4406 (3d ed. June 2024). Accordingly, in the context of claim-splitting when an earlier suit is pending, the relevant factors from the above framework are (1) whether the parties are the same or in privity and (4) whether "the same claim or cause of action" is "involved in both suits." *Gulf Island-IV*, 24 F.3d at 746. *See also Oliney*, 771 F.2d at 859.

Both requirements are plainly established here. First, both of the claims in *Cacho II* and in this lawsuit are asserted against USHA. *Compare* Am. Compl. at ¶¶ 66-70 *with* Ex. A at ¶¶ 98-102; Am. Compl. at ¶¶ 54-55. As USHA is a named defendant in both lawsuits, the identity of

parties with respect to USHA is indisputable.[1]

Second, the claims against USHA in both lawsuits arise from the same transaction or series of transactions. In other words, "the two actions [are] based on the same nucleus of operative facts." *Eubanks*, 977 F.2d at 171. Both lawsuits are based upon alleged telephone solicitations made to Plaintiff either by or on behalf of USHA between the years 2021 through 2023 to solicit the purchase of health insurance coverage. *See*, *e.g.*, Am. Compl. at ¶ 77; Ex. A at ¶ 41. Indeed, the alleged callers at issue in *Cacho II* and in this lawsuit are one and the same. Am. Compl. at ¶¶ 62-64. Rather than seeking to add them as defendants to *Cacho II*, despite multiple amendments to Plaintiff's complaint there, Plaintiff now attempts to file a new lawsuit against USHA and them here. Again, this only further reinforces that *Cacho II* and this new lawsuit are intertwined and about the same telephone solicitations. Plaintiff cannot continue to subject USHA to whatever new theory or claim suits him when there is already a pending lawsuit based on the same nucleus of operative facts. While Plaintiff alleged only text messages in *Cacho II* and in this case he alleges telephone calls were sent to him, they are both "telephone solicitations" for purposes of Plaintiff's claim under 47 U.S.C. § 227(c), and therefore that is still a distinction without a difference in determining whether they involve the same nucleus of operative facts. *See* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation" to include a "telephone call or message"). *See also Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023).

Similarly, in *Vanover v. NCO Financial Services, Inc.*, the Eleventh Circuit rejected any differences in two sets of claims based on the alleged calls in the second lawsuit beginning "earlier

---

[1] Although not particularly essential to USHA's invocation of the rule against claim splitting, USHG is also a named defendant in both lawsuits, and the other defendants are alleged to be in privity with USHA and/or USHG, and are therefore also within the scope of the rule so as to require dismissal of the claims asserted against them. *See Armadillo*, 84 F.4th at 631 (citing *Meza v. Gen Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990)).

than the date alleged" in the first lawsuit or involving calls made to the plaintiff's residential telephone, when her first lawsuit involved calls only to her cellular telephone. 857 F.3d 833, 842 (11th Cir. 2017). As in *Vanover*, these minor differences in the alleged effort by USHA in both lawsuits to sell health insurance to Plaintiff "arise from the same transaction or series of transactions," "the factual bases for both lawsuits are related in time, origin, and motivation, and they form a convenient trial unit, thereby precluding [Plaintiff] from splitting his claims among the lawsuits." *Id.* Indeed, "treatment" of Plaintiff's claims based on telephone calls and text messages "as a unit conforms to the parties' expectations," (*Petro-Hunt*, 365 F.3d at 396), because, as Plaintiff himself alleges, he filed a motion in *Cacho II* to compel discovery about telephone calls on the view that they were part of the case in *Cacho II*. *See* Am. Compl. at ¶¶ 68-71. When his motion was denied because he made no allegations about telephone calls, (Ex. C), that was not an invitation to file yet another lawsuit. The principles that underlie the *res judicata* and claim splitting doctrines required him then to seek leave to amend the complaint to assert such allegations, provided he could make the requisite showings under Rules 15 and 16.

To allow Plaintiff to split his claims would defeat the objectives of "promot[ing] judicial economy and shield[ing] parties from vexatious concurrent or duplicative litigation." *Hlavaty v. Integrated Production Services, Inc.*, No. 5:16-CV-949-DAE, 2017 WL 10699610, *2 (W.D. Tex. Jan. 27, 2017); *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 973 (E.D. Tex. 2015). Therefore, Plaintiff has impermissibly split claims against USHA and the Complaint should be dismissed.

**C. Plaintiff Impermissibly Lumps the Nine Defendants Together**

These generalized, group allegations fail to give the nine Defendants notice of the grounds and facts in support of the claims asserted against them, and under settled law cannot be credited by the Court.

The second ground for dismissal under Rule 12(b)(6) is based on the Amended Complaint lumping together the nine named Defendants as one composite entity named "Defendants," against which virtually all allegations are made. *See* Am. Compl. at ¶¶ 98-102. Pleading in that manner fails to give USHA or any other Defendant notice of the grounds asserted specifically against it individually, as opposed to all nine of them as a group. It is simply implausible that all nine Defendants (three companies and six individuals) engaged in the exact same conduct with each responsible for text messages and phone calls Plaintiff alleges he received so as to be liable for calls and text messages none of them are even alleged to have made themselves.

As Judge Briones found in another TCPA case, "mere global assertions of fault that have no asserted factual connection to" a specific defendant "will be treated as 'naked assertions devoid of further factual enhancement.'" *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 4088205, *4 (W.D. Tex. Sept. 6, 2022) (quoting *Iqbal*, 556 U.S. at 678). Thus, "lumping defendants together is insufficient to state a claim against any of them." *Tap Pilam Coahuiltecan Nation v. Alamo Tr., Inc.*, No. 5:19-CV-01084-OLG, 2019 WL 10945421, *5 (W.D. Tex. Dec. 23, 2019) (quotation omitted). "Allegations like these which lump all defendants together, without identifying specific actions of individual defendants, will not suffice to raise a plausible inference of liability against any individual defendant. A pleading must provide specific factual allegations of violations against specific defendants." *Nat'l United*, 2022 WL 4088205 at *4.

The Amended Complaint has no such allegations. Even though Plaintiff's claim is asserted against all nine Defendants, Plaintiff provides no basis for treating nine separate Defendants with different or no alleged roles as one. Plaintiff alleges that "Defendants placed more than 100 violative phone calls to Plaintiff between April 1, 2021, and May 31, 2023," (Am. Compl. at ¶ 77), yet he never clarifies or breaks down the specific calls each Defendant is responsible for. It is

simply not possible for all nine Defendants to be liable for each and every phone call placed to Plaintiff, especially when only one independent contractor licensed insurance advisors is responsible for each individual solicitation. And everyone is left to guess how UnitedHealthcare of Texas, Inc., which has never been named or identified in any of the litigation proceedings between the parties over the years has any connection to the telephone solicitations at issue. The Amended Complaint simply alleges that it, like all the "Defendants," called Plaintiff, perhaps on a conference call together?

Under settled law, Plaintiff must discern and describe in detail which Defendant each of his allegations applies to in order to give USHA and the other Defendants notice of the grounds and theory of liability asserted specifically and individually against each of them. As it currently reads, Plaintiff alleges that all nine Defendants are liable for each and every one of the more than 100 purported solicitations. *See id*. at ¶¶ 76-77, 94, 99-101. This is a textbook example of lumping defendants together and serves as a ground for dismissal for failure to state a claim for relief. Plaintiff cannot avoid the requirement of making specific factual allegations as to each Defendant.

## II. THE CASE SHOULD STILL BE DISMISSED FOR IMPROPER VENUE

Solely in the event the Court rules the Complaint should not be dismissed under the claim-splitting doctrine or for lumping the Defendants, it should be dismissed for improper venue. USHA does not reside in the Western District of Texas and the events giving rise to Plaintiff's claims did not occur here, either.

### A. Applicable Legal Standard

For venue to be proper, absent some other statutory provision, the case must fall within one of the three provisions of 28 U.S.C. § 1391(b). *Atl. Marine Constr. Co. v. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 56 (2013). The plaintiff has the burden of demonstrating his choice of venue

is proper. *QES Pressure Control LLC v. Zurich American Insurance Company*, No. 4:20-CV-50-DC-DF, 2020 WL 6821335, *1 (W.D. Tex. Aug. 21, 2020); *Brothers v. Federated Mutual Ins. Co.*, No. 5:18-CV-1071-DAE, 2019 WL 8063987, *2 (W.D. Tex. June 21, 2019). If a plaintiff fails to meet the burden of demonstrating proper venue, the court must dismiss the case. *Atl. Marine Constr.*, 571 U.S. at 57. *See also QES Pressure Control*, 2020 WL 6821335 at *2.

**B. Venue Is Not Available Based on Residency in the Western District of Texas**

Under 28 U.S.C. § 1391(b)(1), a case may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). This ground is not available to Plaintiff because while he does not allege the state of residency of any of the individual Defendants, in *Cacho II* he alleged that Maser is a resident of Florida. *See* Ex. B at ¶¶ 3 & 9.[2]

Moreover, USHA does not reside in the Western District of Texas. A business entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). In states with multiple districts—like Texas—a corporation[3] is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). *See also Deaf Interpreter*, 2014 WL 12489608 at *2. Therefore, "28 U.S.C. § 1391 largely collapses the venue analysis into a personal jurisdiction

---

[2] The Court can take judicial notice of Plaintiff's allegation of Maser's residency. *See, e.g.*, *Drummer v. Brown*, No. SA-23-CV-00389-OLG, 2023 WL 9177096, *2 n.2 (W.D. Tex. July 17, 2023) (taking judicial notice of plaintiff's court filing in another lawsuit "wherein he admits knowledge of his injury based upon alleged falsification of documents"), *aff'd*, No. 24-50004, 2024 WL 4449418 (5th Cir. Oct. 9, 2024).

[3] Although USHA is not a corporation, courts treat other business entities as corporations for purposes of determining venue. *See, e.g., Deaf Interpreter Servs., Inc. v. Webbco Enters., L.L.C.*, No. SA:13-CV-867-OG, 2014 WL 12489608, *2 n.1 (W.D. Tex. Jan. 28, 2014) (citing *Graham v. Dyncorp Intern., Inc.*., 3:13-CV-00065, 2013 WL 5305788, *2 n.2 (S.D. Tex. Sept. 19, 2013)).

analysis." *Deaf Interpreter*, 2014 WL 12489608 at *2. As such, the analysis becomes whether USHA would be subject to personal jurisdiction in the Western District of Texas, assuming this District were considered its own state.

Although USHA resides in the State of Texas, it would not be subject to personal jurisdiction in the Western District of Texas in this dispute if it were its own state. USHA is not subject to general jurisdiction in the Western District. For purposes of general personal jurisdiction, USHA is not "at home" in the Western District because it maintains its principal place of business in Fort Worth, Texas, which is located in the Northern District of Texas. Declaration of Dean Whaley at ¶ 3. *Accord Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff's exclusive basis for venue in this District is that "[v]enue is proper . . . because [USHA] is at home in Texas." Am. Compl. at ¶ 30. This is insufficient to establish general jurisdiction because, assuming the Western District of Texas was considered its own state for the sake of the personal jurisdiction analysis, USHA would be considered as existing under the laws of the Northern District of Texas, as opposed to the Western District of Texas or all of Texas as a whole. *See Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 477-79 (W.D. Tex. 2016); *Deaf Interpreter*, 2014 WL 12489608 at *2. Nothing in the Amended Complaint would support Plaintiff's burden on venue as to any of the other Defendants in the Western District of Texas, either.

Plaintiff's exclusive basis for general personal jurisdiction over USHA or the other Defendants in the Western District of Texas if it were its own state is his conclusory allegations that USHA is "registered and or licensed to transact business within . . . Texas and . . . marketed and sold insurance products to consumers in the State of Texas and derived substantial revenue from their activities." Am. Compl. at ¶ 29. First, none of that is specific to the Western District

of Texas, as opposed to the Northern, Eastern, or Southern Districts. Regardless, even if this conclusory allegation could be applied to the Western District of Texas as if it were its own state, it is settled law that substantial sales of goods, advertisement, and business registration in a state are insufficient to constitute continuous and systematic contacts sufficient to satisfy the high standard of a foreign defendant being "essentially at home" in that state. *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 339 (5th Cir. 2020) (holding extensive advertisements targeted at forum state and subsidized shuttle service were not enough to confer general jurisdiction over defendant casino); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) (holding that "the mere act of registering an agent [does] not create [defendant's] general business presence in Texas"); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372-73 (5th Cir. 1987) (finding nearly $250 million in goods sent to Texas was not enough to establish general jurisdiction). Accordingly, Plaintiff fails to satisfy his burden on venue on these grounds, too.

### C. The Events Giving Rise to the Claims Did Not Occur in the Western District of Texas

Nor would USHA (or, for that matter, any of the other Defendants) be subject to specific jurisdiction in the Western District of Texas if it were its own state under the Fifth Circuit's three-prong analysis: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Plaintiff makes no allegation in support of these factors, nor can he.

Plaintiff's cellular telephone number is not even a Texas telephone number, but one with a Florida area code. Am. Compl. at ¶ 94; Declaration of Roy Taub at ¶¶ 2-3. This is fatal to any

showing of specific personal jurisdiction because, to make such a showing, a plaintiff is required to point to "an action of the defendant purposefully directed toward the forum State," and not some other state. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987). "In determining whether phone calls or text messages are sufficient contacts with the forum state" in TCPA cases, "district courts have focused on whether the defendant 'knew or should have known' that its calls or text messages were sent into [the forum state]." *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 2:19-CV-02-444-ODW-ASX, 2019 WL 6135030, *6 (C.D. Cal. Nov. 19, 2019) (quoting *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012)). Thus, a key factor in the "purposeful direction" analysis in TCPA cases is the area code of the telephone number that allegedly was called. *See id.* (collecting cases).

Plaintiff's telephone number on which he alleges he was called had a 407 area code. Am. Compl. at ¶ 94. It is the same telephone number Plaintiff alleges was called in *Cacho II*. *See* Ex. A at ¶ 34. That is a Florida – not Texas – area code. *See* Taub Decl. at ¶¶ 2-3. Thus, to the extent anyone called Plaintiff's telephone number, they thought they were calling someone in (and directing their conduct toward) the State of Florida, which creates no jurisdictional contacts with the State of Texas. *See, e.g.*, *Green v. Ox Car Care, Inc.*, No. 4:20-CV-708-BJ, 2021 WL 3883624, *5 (N.D. Tex. July 22, 2021); *Cunningham v. Mark D. Guidubaldi & Assocs., LLC,* No. 4:18-CV-00118-ALM-CAN, 2019 WL 1119365, *7 (E.D. Tex. Jan. 11, 2019), report and recommendation adopted, 2019 WL 1117915 (E.D. Tex. Mar. 11, 2019); *Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618 AWI SKO, 2018 WL 3155618, *5 (E.D. Cal. June 25, 2018); *Kern v. VIP Travel Servs.*, No. 1:16-CV-8, 2017 WL 1905868, *5 (W.D. Mich. May 10, 2017). "In sum, because [the purported caller] did not directly target [Texas], there was no express aiming and thus, no purposeful direction. Without purposeful direction, there is no personal jurisdiction." *Abedi*, 2018

WL 3155618 at *5 (internal citations omitted).

Further, under 28 U.S.C. § 1391(b)(2), a case may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, ***none*** of the events giving rise to Plaintiff's claims occurred in the Western District of Texas. Plaintiff alleges he is *now* a Texas resident, (Am. Compl. at ¶ 30), but that is immaterial. Plaintiff alleged on July 24, 2023, *after* the telephone solicitations at issue, that he was then a "resident of the Middle District of Florida, and was present in Florida for all text messages, in this case in Seminole County, Florida." Ex. A at ¶ 1. Notably, unlike in *Cacho II*, Plaintiff does not allege here that he was a resident of or even in the State of Texas when he received any of the telephone calls he seeks to place at issue in this lawsuit. Nor could he since he alleges those solicitations occurred "through May 31, 2023," (Am. Compl. at ¶ 76), when he was still a resident of Florida. *See* Ex. A at ¶ 1.

On these indisputable facts, Plaintiff cannot carry his burden to show that venue is proper in this District, and to the extent the case is not dismissed for failure to state a claim for relief, it should be dismissed under Rule 12(b)(3).

## CONCLUSION

For the foregoing reasons, USHA respectfully requests that the Court enter an Order dismissing the Amended Complaint with prejudice and granting any further relief the Court deems appropriate.

Dated: December 24, 2024

GREENSPOON MARDER LLP

*/s/ Roy Taub*

JEFFREY A. BACKMAN, ESQ
W.D. Tex./Fla Bar No. 0662501
jeffrey.backman@gmlaw.com
ROY TAUB, ESQ.
W.D. Tex./Fla. Bar No. 116263
roy.taub@gmlaw.com
200 East Broward Blvd., Suite 1800

Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

*Attorneys for Defendant*
*USHEALTH Advisors, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 24, 2024, a true and correct copy of the foregoing was served on all counsel of record via ECF.

*/s/ Roy Taub*_________
ROY TAUB